EVANS BROTHERS COMPANY, INC., and Iowa National Mutual Insurance Company, Plaintiffs-Respondents,†

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant, Richard G. PALMER, Defendant-Appellant.

Court of Appeals

*No. 82–1377. Submitted on briefs March 16, 1983.—Decided May 18, 1983.*
(Also reported in 335 N.W.2d 886.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *C. James Riester* of *Schroeder, Gedlen, Riester & Melin* of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the brief of *Nonald J. Lewis and Patti J. Kurth* of *Kasdorf, Dall, Lewis & Swietlik, S.C.* of Milwaukee.

Before Scott, C.J., Voss, P.J., and Brown, J.

SCOTT, C.J. On Richard G. Palmer's first day of work for Evans Brothers Company, he was seriously injured when he became pinned between a floor cleaning machine and a truck. Surgical repair of Palmer's internal injuries left extensive scars on his torso. An examiner for the Department of Industry, Labor and Human Relations found that Palmer was entitled to $14,176.50 in compensation for potential wage loss because of his disfigurements; the Labor and Industry Review Commission affirmed the examiner. Palmer ap-

peals from a circuit court reversal of the Commission. The issues are whether the Commission reached a reasonable legal conclusion when it decided that Palmer's scars would "occasion potential loss of wage" within the meaning of sec. 102.56, Stats. (1975), and whether the Commission correctly calculated the amount of Palmer's award pursuant to sec. 102.11(1)(g), Stats. (1975).[1] Because we have determined that the Commission's legal conclusion was reasonable and that the Commission fixed the correct ceiling on Palmer's award, we reverse the trial court.

Palmer was seventeen years old at the time of the accident in June 1977 and was working for Evans Brothers during the summer vacation before his senior year in high school. It is undisputed that the accident left Palmer with numerous scars. The Department hearing examiner found that Palmer's injury and the related surgery resulted in the following permanent disfigurement:

first, a 48 centimeter long whitish-pink surgical scar extending from [the notch at the center of Palmer's collarbone to well below his waist]; a 15 centimeter long left transverse surgical scare [at the level of Palmer's naval] which is reddish in appearance; third, a 14 centimeter long right subcostal scar [at the base of Palmer's rib cage] which is reddish in appearance; fourth, a pinkish-brown, irregular depression, measuring 2 inches long, 3/4 of an inch wide and 5/8 of an inch deep, located just above and to the right of the right subcostal scar; fifth, a pinkish-brown, irregular depression approximately 3/4 of an inch in length located just below the right subcostal scar; and sixth, a raised ir-

[1] In reviewing a decision by an administrative agency, this court owes no deference to the circuit court that previously reviewed the decision. *See Frito-Lay, Inc. v. Wisconsin Labor & Industry Review Commission*, 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (Ct. App. 1980). We focus, therefore, on whether the commission acted correctly rather than on whether the circuit court erred in its review.

regular pinkish scar on his right arm approximately 1 inch in length.

The examiner found that when Palmer wears a short-sleeved shirt, only the right arm scar and a portion of the scar that begins at the collarbone are visible. The examiner further found that when Palmer is shirtless, "all the scarring . . . is both visible and noticeable."

Palmer graduated from high school in June 1978, worked for more than one year as night manager for a fast-food restaurant and then became employed as a carpet installer. In January 1980, he was laid off from his carpet installation job. In March 1980, Palmer began his own carpet installation business. The examiner found that Palmer's work involves substantial contact with the public. Palmer typically wears a short-sleeved shirt while at work; during hot weather, he works shirtless.

Given the various shapes, colors and textures of Palmer's scars and the substantial public contact that his present work requires, the examiner concluded that Palmer's disfigurement "will probably occasion potential loss of wage" and fixed compensation at $14,176.50.

Evans Brothers appealed to the Commission, which affirmed, and then to the circuit court. The circuit court concluded that the Commission's decision was not supported by credible and substantial evidence and reversed. The court noted that Palmer's actual wages had risen steadily since the accident and that a rehabilitation counselor had testified Palmer would not experience any wage loss due to his disfigurement.

The disfigurement statute in effect at the time of Palmer's accident read:

If an employe is so permanently disfigured as to occasion potential loss of wage, the department may allow such sum for compensation on account thereof, as it deems just, not exceeding his average annual earnings as defined in s. 102.11.

Sec. 102.56, Stats. (1975).

The first issue before us is whether the Commission erred in concluding that the scars on Palmer's torso and arm would "occasion potential loss of wage" within the meaning of sec. 102.56, Stats. (1975). We determine that the Commission's conclusion was reasonable.

In the absence of fraud, findings of fact made by the Commission acting within its powers are conclusive. Sec. 102.23(1), Stats. This court may reverse a decision of the Commission only upon the following grounds:

1. That the commission acted without or in excess of its powers.
2. That the order or award was procured by fraud.
3. That the findings of fact by the commission do not support the order or award.

Sec. 102.23(1)(d). Although the Commission's findings of fact are conclusive so long as they are supported by credible and substantial evidence, any legal conclusion drawn by the Commission from its findings of fact is subject to judicial review. *Wehr Steel Co. v. Department of Industry, Labor & Human Relations,* 106 Wis. 2d 111, 117, 315 N.W.2d 357, 361 (1982). This court is not bound by the Commission's conclusion on a question of law, but if the Commission's legal conclusion is reasonable, the court will sustain the Commission's view even though an alternative view may be equally reasonable. *United Way of Greater Milwaukee, Inc. v. Department of Industry, Labor & Human Relations,* 105 Wis. 2d 447, 453, 313 N.W.2d 858, 861 (Ct. App. 1981).

We conclude that the issue of whether Palmer's disfigurement would occasion potential wage loss presents a mixed question of fact and law. The nature of Palmer's disfigurement and the extent to which his present occupation requires public contact are questions of fact. Whether Palmer's kind of disfigurement will "occasion

potential wage loss" in the carpet laying business is a question of law. *See Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979).

Evans Brothers concedes that Palmer was permanently disfigured as a result of his accident. The company contends, however, that the fact of disfigurement is not synonymous with proof that the disfigurement has the potential to occasion wage loss. The examiner's findings do go beyond mere description of Palmer's scars. The examiner found that part of Palmer's largest scar is visible when he wears an open-collared shirt, as is the entire raised pinkish scar on his right arm. Further, the examiner found that in Palmer's present occupation, he works shirtless during warm weather and that when he is shirtless, his scars are both "visible and noticeable."

We have reviewed the hearing transcript and have examined photographs of Palmer's scars. This is a close case. While Palmer's scars are not dramatically disfiguring and while they may be exposed to their full extent during only one season of the year, the Commission's conclusion that Palmer's disfigurement will occasion potential wage loss is reasonable. Accordingly, we sustain it.

The second issue on appeal is whether the Commission erred in basing Palmer's disfigurement award on an average weekly earnings figure equivalent to the amount upon which maximum weekly indemnity was payable in 1977. We conclude that the Commission correctly calculated the ceiling on Palmer's compensation.

Under sec. 102.56, Stats. (1975), a disfigurement award may not exceed the employee's average annual earnings "as defined in s. 102.11." Section 102.11(1)(g), Stats. (1975), provides:

If an employe is under twenty-seven years of age, his average weekly earnings on which to compute the benefits accruing for permanent disability or death shall be determined on the basis of the earnings that such employe, if not disabled, probably would earn after attaining the age of twenty-seven years. Unless otherwise established, said earnings shall be taken as equivalent to the amount upon which maximum weekly indemnity is payable.

Evans Brothers contends that Palmer's earnings were "otherwise established" as $2.50 per hour by the testimony of John McTaggart, the company's operations manager. McTaggart stated that Palmer was employed as a warehouse maintenance worker at the time of his accident and was receiving a salary of $2.50 per hour. McTaggart further stated that anyone employed by the company during the summer of 1977 to do general warehouse maintenance would have received $2.50 per hour, whether he were seventeen or twenty-seven.

Evans Brothers misconceives the focus of sec. 102.11 (1) (g), Stats. (1975). The statute does not ask the Commission to determine what a twenty-seven-year-old would have received for the work that the younger employee was doing at the time of the injury; rather, the statute directs the Commission to determine what the younger worker would probably earn in the job that he or she would hold after attaining the age of twenty-seven. In adopting sec. 102.11(1)(g), the legislature recognized that a young worker's wages may be utterly inadequate to form a reliable basis on which to compute his or her probable earnings as a mature member of the labor force. *Badger Carton Co. v. Industrial Commission of Wisconsin*, 195 Wis. 327, 331, 218 N.W. 190, 191-92 (1928). In fixing an award to a young employee, the Commission need not assume that the injured worker would have remained in the same job or at the same company until the age of twenty-seven. See *id*, at 329,

218 N.W. at 191. In addition to the actual earnings at the time of injury, the Commission may consider the qualifications of the employee and his or her educational level and experience. *Id.* at 330–31, 218 N.W. at 191.

Palmer was injured while he was a seventeen year old high school student working on a summer job. The Commission correctly concluded that the hourly wage Palmer received for that summer employment was a poor index to his probable earnings as a twenty-seven-year-old high school graduate. The Commission did not err in fixing Palmer's average weekly earnings as equivalent to the amount upon which maximum indemnity was payable.

*By the Court.*—Judgment reversed.