CALUMET COUNTY, a Wisconsin municipal corporation,
Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Appellant,
Donald J. KOSSMAN, Defendant.

Court of Appeals

No. 83–2130. Submitted on briefs June 18, 1984.—
Decided July 18, 1984.
(Also reported in 354 N.W.2d 216.)

For the appellant, the cause was submitted on the briefs of *Floyd F. Tefft*.

For the respondent, the cause was submitted on the brief of *M.E. Mellor*, corporation counsel for Calumet County.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  The Labor and Industry Review Commission (LIRC) appeals from a judgment reversing its ruling that Donald J. Kossman's 1982 unemployment compensation benefits were not subject to reduction despite retirement benefits received by him for the same period.  The trial court found that a reduction was necessary and remanded the case to LIRC for a determination as to the amount of 1982 unemployment compensation benefits Kossman must refund based on pension benefits paid for that year.  We conclude that Kossman did not "constructively receive" pension payments for the weeks of 1982 for which he was paid unemployment compensation benefits.  Therefore, we agree with LIRC and reverse the trial court.

Kossman was employed as a deputy sheriff for Calumet county for twenty-three years.  He was required to retire at age fifty-five, and his last day of employment was December 31, 1980.  Prior to his retirement, Kossman received a document from the Department of Em-

ploye Trust Funds describing his annuity alternatives and estimating monthly payments under each plan.[1] Kossman did not apply for his pension benefits immediately following his retirement because he hoped he would be reinstated by his employer. Instead, Kossman filed for unemployment compensation benefits in January 1981. These benefits were ultimately granted and are not at issue in this case.

Kossman was then held eligible for extended benefits for five weeks of 1982 ending on February 20, 1982. It is these benefits which are at issue in this case. After his unemployment benefits ran out, Kossman filed an application for his pension benefits on March 30, 1982. On or about May 17, 1982, Kossman received notice from the Department of Employe Trust Funds that his pension application was approved and his first check would be a lump-sum amount for the period January 1, 1982 through May 31, 1982. This check was received in June 1982.

On July 16, 1982, the appeal tribunal issued a further decision affirming the department's determination that Kossman was eligible for additional benefits for the five weeks of 1982. This decision was affirmed by LIRC on September 22, 1982. The county sought further judicial review by amended complaint and answer. The trial court held that Kossman's 1981 unemployment compensation benefits were not subject to reduction and refund because Kossman had not, as yet, applied for retirement benefits. However, since Kossman's initial lump-sum payment in June 1982 was computed and paid effective January 1, 1982, the trial court ordered a reduction in Kossman's 1982 unemployment compensation benefits.

The question before us is the construction of sec. 108.05(7)(a) and (d), Stats., which provides as follows:

---

[1] Kossman testified that he received this information prior to his retirement. A letter from the Department of Employe Trust Funds to Kossman stated, however, that this information was sent on January 23, 1981—after Kossman's retirement.

(a) Benefits otherwise payable to a claimant for a week of partial or total unemployment, in a period of time with respect to which the claimant *actually or constructively receives a pension payment, shall be reduced, but not below zero, by an amount equal to the proportion of the pension payment reasonably attributable to that week.*

. . . .

(d) A claimant constructively receives a pension payment under par. (a) only as to weeks occurring *after the effective date of the commencement of eligibility for such payments and after the claimant has had due notice from the retirement system of his or her eligibility.* [Emphasis added.]

The construction of a statute presents a question of law. *Wisconsin Department of Revenue v. Milwaukee Brewers Baseball Club,* 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983). Great weight is to be accorded to the construction and interpretation of a statute by an administrative body charged with the duty to apply such statute. *State v. Labor & Industry Review Commission,* 113 Wis. 2d 107, 109, 334 N.W.2d 279, 280 (Ct. App. 1983). While a reviewing court is not bound by an administrative agency's conclusion on a question of law, if the agency's legal conclusion is reasonable, the reviewing court will sustain the agency's view even though an alternative view may be equally reasonable. *Evans Brothers Co. v. Labor & Industry Review Commission,* 113 Wis. 2d 221, 225, 335 N.W.2d 886, 888 (Ct. App. 1983). On appeal, our standard of review is the same as that applied by the circuit court. *Frito-Lay, Inc. v. Wisconsin Labor & Industry Review Commission,* 95 Wis. 2d 395, 400, 290 N.W.2d 551, 555 (Ct. App. 1980), *aff'd,* 101 Wis. 2d 169, 303 N.W.2d 668, *appeal dismissed,* 454 U.S. 884 (1981).

The trial court acknowledged that sec. 108.05(7) (d), Stats., could be read to support either the contention of

the Commission or of the county. This language seems to acknowledge that the *Evans Brothers* situation exists whereby two equally reasonable interpretations of the statute are present. On this basis alone, it could be argued that the judgment of the trial court should be reversed and the decision of LIRC reinstated.

However, our independent analysis of the two-pronged test as to whether a constructive pension payment has occurred within the meaning of sec. 108.05(7)(d), Stats., satisfies us that the commission's interpretation of the statute is reasonable.

The first prong of the statute provides that a pension payment is constructively received "only as to weeks occurring after the effective date of the commencement of eligibility for such payments . . . ." We conclude that the effective date of the commencement of eligibility for Kossman's pension payments was January 1, 1982—the date from which the lump-sum initial payment was measured. We conclude this language to be clear and unambiguous under the facts of this case. Because Kossman did not receive this payment until June 1982 and because the payment covered those weeks since the effective date of the commencement of Kossman's eligibility, the payments were constructively received within the meaning of the first prong of the test of sec. 108.05(7)(d), Stats. We therefore agree with the trial court's implied finding that this prong of the test was satisfied —even though the trial court referred to it as an *actual* payment.

The second prong of the constructive payment test requires that the claimant had "due notice from the retirement system of his or her eligibility." Although the trial court's decision did not expressly discuss this factor, it did allude to it by referring to a case previously de-

cided by the trial court.[2] As the trial court noted in that decision, the communication sent by the Department of Employe Trust Funds to the prospective applicant at or about the time of his retirement did not constitute the "due notice from the retirement system of his or her eligibility" within the meaning of the statute. The form simply states annuity alternatives available to the prospective applicant and estimates as to monthly payments under the alternative plans.

■

Section 108.04(13)(e), Stats., requires the individual claiming unemployment benefits to notify the department of application for entitlement to, or receipt of, pension payments. This statute obviously contemplates a prior application for such benefit payments. This gives the department the requisite notice to implement the reduction procedures of sec. 108.05(7), Stats. Reading both statutes *in pari materia,* we conclude that sec. 108.05(7)(d) when speaking of "due notice . . . of . . . eligibility" also contemplates a prior application. Therefore, we agree with the trial court's decision in its earlier case that "due notice . . . of . . . eligibility" means something more than an informational document supplied by an employer to a prospective applicant for pension benefits. Even if we concluded otherwise, we cannot say that the commission's interpretation is unreasonable.

■

Section 108.05(7)(d), Stats., *limits* constructive receipt of a pension to *only* those weeks occurring after the effective date of commencement of eligibility and after due notice of eligibility. This language infers that

---

[2] The case was *Calumet County v. L.I. & R. Commission and Warren Jodar,* 82–CV–61. The trial court utilized the rationale of the *Jodar* case in affirming LIRC's determination that Kossman was entitled to all of the 1981 unemployment compensation benefits since he had not, as yet, applied for his retirement benefits.

there may be periods of time for which unemployment compensation benefits and pension benefits have been received which are not covered by the statute. Wisely or not, secs. 108.04(13)(e) and 108.05(7)(d), Stats., as interpreted by the commission, allow a limited period of double payments. As we stated in *Town of Pine Grove v. Labor & Industry Review Commission,* 112 Wis. 2d 412, 416, 332 N.W.2d 868, 870 (Ct. App. 1983):

Appellant's principal complaint is that the legislature was overly generous with benefits for injured employees at the expense of the municipalities who employed them. This is legislative policy, and it is not for this court to modify or nullify it.[3]

We conclude the interpretation of sec. 108.05(7)(d), Stats., by the commission is not unreasonable and should have been given deference by the trial court.

*By the Court.*—Judgment reversed.

---

[3] We acknowledge that *Town of Pine Grove* involved disability payments under sec. 66.191(1), Stats. However, the underlying principle of yielding to the statutory scheme is applicable to the instant case.