FIEDLER FOODS, INC., Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF REVENUE,
Respondent.

Court of Appeals

*No. 87–0407. Submitted on briefs December 7, 1987.—Decided
December 23, 1987.*

(Also reported in 419 N.W.2d 311.)

For the petitioner-appellant the cause was sub-
mitted on the brief of *George R. Kamperschroer* and
*Boardman, Suhr, Curry & Field,* of Madison.

For the respondent the cause was submitted on
the brief of *Donald J. Hanaway,* attorney general, and
*John C. Murphy,* assistant attorney general.

Before Dykman, Eich, and Sundby, JJ.

EICH, J.  Fiedler Foods, Inc., appeals from an order affirming a decision of the tax appeals commission. The commission upheld an assessment of sales taxes against Fiedler in connection with the sale of its business fixtures. The issue is whether Fiedler continued to "hold" its seller's permit on the date of the sale within the meaning of sec. 77.51(10)(a), Stats. (1983–84), and sec. 77.54(3) and (4), Stats., and thus was ineligible to claim the "occasional sales" exemption from the sales tax. Because we defer to the commission's reasonable interpretation of the statutes it administers, *Revenue Dept. v. Lake Wisconsin Country Club,* 123 Wis. 2d 239, 242–43, 365 N.W.2d 916, 918 (Ct. App. 1985), we affirm the order.

The facts are not in dispute. Fiedler operated a grocery store in Cuba City, Wisconsin, and held a Wisconsin sales tax permit. In early 1984, Fiedler sold all of its assets—consisting of store fixtures and merchandise inventory—to Redfearn Foods, Inc. On Saturday, March 3, 1984, Fiedler took its final inventory, and at 11:00 p.m., placed its seller's permit in an envelope addressed to the Wisconsin Department of Revenue and deposited it in a mailbox outside the Cuba City Post Office, which had closed at 4:00 p.m. that day. Sometime after 11:00 p.m., the closing took place and Redfearn took possession of the property. Because the post office was closed over the weekend, the envelope was not postmarked until Monday, March 5, and was not received by the department until the following day. The department assessed a tax on the sale of Fiedler's equipment on grounds that, under the applicable statutes and administrative rules, Fiedler was not entitled to claim the exemption

for occasional sales of property because it continued to hold a seller's permit on March 3, 1984, the date of the sale. The tax appeals commission upheld the assessment and the circuit court affirmed.

Section 77.54(7), Stats., exempts "occasional sales of ... personal property" from the sales tax, but sec. 77.51(10)(a) (1983–84)[1] provides that "[n]o sale ... may be deemed an occasional sale if at the time of such sale the seller holds ... a seller's permit." A "sale" occurs "at the time and place when and where possession is transferred by the seller ... to the purchaser ...." Sec. 77.51(4r) (1983–84).[2] Finally, Wis. Adm. Code, sec. Tax 11.13(2)(a), provides that a person with a seller's permit may nonetheless claim the occasional sale exemption "if that person delivers the seller's permit to the department for cancellation prior to the disposition [of business assets]."

Thus, a permit holder desiring to transfer business assets may claim the occasional sale exemption if he or she delivers the permit to the department for cancellation prior to closing the sale. Because the seller must wait until the business is closed before surrendering the permit, Wis. Adm. Code, sec. Tax 11.13(3)(b) allows, in lieu of personal delivery to the department, delivery by mail, which is deemed to be effective as of 12:01 a.m. on the date of the postmark. By use of this alternative method of surrendering the permit, a seller who desires to remain in business up to the time of sale can still claim the occasional sale exemption by mailing the permit to the department, and securing a postmark, on the day of the sale.

---

[1] This section has been renumbered as sec. 77.51(9)(a), Stats. Sec. 23, 1983 Wis. Act 544.

[2] This section has been renumbered as sec. 77.51(14r), Stats. Sec. 18, 1983 Wis. Act 544.

Fiedler argues first that it did not "hold" a seller's permit at the time of sale within the meaning of sec. 77.51(10)(a) (1983–84), Stats., because, having been deposited in a mailbox an hour earlier, the permit was no longer in its physical possession. In so arguing, Fiedler relies on *Three Lions Supper Club v. Dept. of Revenue*, 72 Wis. 2d 546, 550–51, 241 N.W.2d 190, 192 (1976), where the supreme court referred to the dictionary definition of "hold" as implying actual physical possession of the permit. In that case, the taxpayer had physically delivered the permit to a representative of the department, and the court held that after that delivery, the taxpayer could no longer be said to "hold" the permit within the meaning of sec. 77.51(10)(a) (1983–84). We do not believe *Three Lions* compels the result advocated by Fiedler in this case.

In *Three Lions,* the department maintained that, despite the fact that the taxpayer had physically delivered the permit to the department, he continued to "hold" it until it was "canceled" by the department—an act apparently completed (the court does not state) at some later date. The court rejected the argument, noting that the department's position could lead to the absurd result of allowing it to hold the seller's sales tax liability open for "several weeks" after actual delivery of the permit by simply delaying the act of cancellation for the purpose of taxing an otherwise exempt occasional sale of business assets. *Id.*, 72 Wis. 2d at 550, 241 N.W.2d at 192.

In this case, however, Fiedler did not physically deliver the permit to the department. Had it done so there would be no question of compliance with the rules, for personal delivery to the department is now conclusive. Wis. Adm. Code, sec. Tax 11.13(3)(a). Fiedler chose the other alternative, delivery by mail

under sec. Tax 11.13(3)(b), and thus made legal delivery to the department conditional on the postmark date. Fiedler chose the manner of compliance and has not satisfied us that anything said in *Three Lions* would relieve it from the plain language of that rule.

Fiedler next argues that the "postmark" rule is inconsistent with the statute under which it was adopted, sec. 77.51(10)(a), Stats. (1983–84). Fiedler's position is that because the statute speaks in terms of "hold[ing]" a permit and does not specifically refer to "postmarks," "mailing," or "personal delivery," the department lacked authority to adopt a rule conditioning compliance with the statutes on postmark mailing or personal delivery. We agree with Fiedler that an administrative rule "may not stand at variance with an unambiguous statute." *Basic Products Corp. v. Department of Taxation,* 19 Wis. 2d 183, 186, 120 N.W.2d 161, 162 (1963). This is consistent with the general rule that "an administrative agency has only those powers which are expressly conferred [by the legislature] or which are fairly implied from the ... statute under which it operates." *State (Dept. of Admin.) v. ILHR Dept.,* 77 Wis. 2d 126, 136, 252 N.W.2d 353, 357 (1977). Because of the expertise reposing in administrative agencies, however, they are "'granted a great deal of latitude in regulatory matters ....'" *A.O. Smith Corp. v. Oglesby,* 108 Wis. 2d 583, 585, 323 N.W.2d 143, 144 (Ct. App. 1982), quoting *Wis. Environmental Decade v. Public Service Comm.,* 81 Wis. 2d 344, 351, 260 N.W.2d 712, 716 (1978).

The department of revenue is empowered by sec. 73.03(1), Stats., "[t]o have and exercise general supervision over the administration of the ... tax laws of the state ...." Other relevant statutes require a retailer wishing to avoid a tax on the sale of business

assets to surrender his or her seller's permit prior to closing the sale. Secs. 77.51(4r) (1983–84), 77.51(10)(a) (1983–84), and 77.54(7), Stats. In addition, however, the retailer must hold the seller's permit for as long as he or she wants to do any business. Sec. 77.52(12). In order to facilitate exemption claims in situations where the retailer wishes to claim the occasional sale exemption in connection with a sale of the business, and wants to continue operation up to the time of the sale, the department adopted Wis. Adm. Code, sec. Tax 11.13(3) which, as we have noted, provides alternative means of surrendering the permit. Sellers may either deliver the permit personally to the department or they may choose to mail it in, either by certified mail or by regular mail. In the latter case the postmark date is deemed to constitute the date of cancellation.

We see nothing in the rule that is contrary to, or inconsistent with, the statutory scheme. Fiedler itself concedes that the rule clarifies the statutory procedures, and we agree. Wisconsin Adm. Code, sec. Tax 11.13(3), is in accord with the statutory policy expressed in secs. 77.51 and 77.54, Stats., and, in our opinion, lies well within the bounds of the department's rulemaking authority.

Finally, we note that Fiedler devotes much of its argument to the assertion that application of the rule to the sale in question works a harsh result by requiring payment of some $3,500 in sales taxes on an obvious nonretail sale, and in general sets a "trap for the unwary."

While the consequences of Fiedler's failed attempt to meet the requirements of the exemption may be harsh, this is so not because of an invalid rule or an unduly oppressive application of the statutes and supplementary rules, but because of the manner in

which Fiedler chose to comply with the legal prerequisites for claiming the exemption. One electing to use the alternative mailing procedures authorized by Wis. Adm. Code, sec. Tax 11.13(3)(b), must be held to an awareness of the conditions, limitations and risks inherent in their use. The key to the timing of the sales permit cancellation, which is essential to claiming the exemption, is the postmark date. We fail to see any undue hardship in requiring one choosing this more convenient means of surrendering a permit to so arrange the transaction to avoid weekend and late-night hours when it is well known that post offices will be closed.

Fiedler lost the exemption not, as it argues, simply because the post office was closed, but because it selected a specific means of qualifying for the exemption and then failed to comply with the applicable requirements. Tax exemptions, being matters of legislative grace, are to be strictly construed against granting the exemption, *Ramrod, Inc. v. Department of Revenue*, 64 Wis. 2d 499, 504, 219 N.W.2d 604, 607 (1974), and we cannot say that the department's interpretation of the exemption statutes and rules in this case lacked a rational basis—even though an alternative interpretation may have been equally reasonable. *See Calumet County v. LIRC*, 120 Wis. 2d 297, 300, 354 N.W.2d 216, 218 (Ct. App. 1984) (great weight is accorded to agency's construction of statutes it administers and if its legal conclusion is reasonable, reviewing court will sustain agency's view even though alternative view may be equally reasonable).

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). A statute should be construed to give effect to its leading idea. *State v.*

728

*Okray Produce Co., Inc.,* 132 Wis. 2d 145, 150, 389 N.W.2d 825, 827 (Ct. App. 1986). The legislature in enacting the sales tax law intended only to tax sales at retail. The department's construction of the applicable statutes results in imposing an unfair and unintended tax on the sale of a small town business. An agency construction which is contrary to the legislative intent is per se unreasonable. We owe no deference to such a construction. *See State ex rel. Staples v. DHSS,* 136 Wis. 2d 487, 497, 402 N.W.2d 369, 375 (Ct. App. 1987) (we accept the agency's interpretation of a statute only if it is consistent with the purpose of the statute).

Section 77.52(1), Stats. (1983–84),[1] imposes a retail sales tax on sales of personal property "at retail." Section 77.54(7) exempts from retail sales taxes the "occasional sales" of tangible personal property. Section 77.51(10)(a) defines "occasional sales" to include isolated and sporadic sales of tangible personal property where the infrequency of the sales supports the inference that the seller is not pursuing a vocation, occupation or business as a vendor of personal property. The definition further provides: "No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit ...." *Id.* The obvious purpose of the latter qualification is to insure that a retail seller does not avoid the tax by claiming that a sale at retail is in fact an isolated or sporadic sale.

A seller's permit may be held "only by persons actively operating as sellers of tangible personal property or taxable services. Any person not so operating shall forthwith surrender that person's

---

[1]References to ch. 77, Stats., refer to the 1983–84 statutes.

permit to the department for cancellation." Sec. 77.52(12), Stats. In *Three Lions Supper Club v. Dept. of Revenue,* 72 Wis. 2d 546, 550, 241 N.W.2d 190, 192 (1976), the court rejected the department's construction that a seller's permit continued in effect after its surrender until cancelled by the department. The court gave the word "hold" its common meaning.

> To "hold" something is to have it in one's possession. The dictionary defines "hold" as meaning: "to retain in one's keeping: maintain possession of: not give up or relinquish." The Uniform Commercial Code, in another context, defines "holder" as "a person who is in possession of a document . . . or an instrument or an investment security . . . ." The word "hold" relates to possession. As used in defining "occasional sales," it makes possession rather than cancellation the controlling factor.

*Id.* at 550–51, 241 N.W.2d at 192 (footnotes omitted).

Our decision today overrules *Three Lions.* We are not permitted to depart from supreme court precedent. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

The majority finds authority for overruling *Three Lions* in administrative regulations, Wis. Adm. Code, secs. Tax 11.13(3)(a) and (b) which require that a person holding a seller's permit, in order to make an occasional sale, personally deliver the permit to the department before the sale or deliver the permit by a letter postmarked on the day of the sale.[2] Because the

---

[2]The department acknowledges "the occasional seller required to hold a seller's permit is presented with some difficulty" in complying with Wis. Adm. Code, sec. Tax 11.13(2)(a), which requires delivery of the seller's permit to the department for cancellation prior to disposition and also complying with the

post office in Cuba City was closed when Fiedler Foods deposited the letter containing the permit in the post office mailbox, the letter was not postmarked until several days after the sale. The department contends that therefore Fiedler Foods continued to "hold" the permit when the sale of its business closed.

Fiedler Foods did not "hold" a seller's permit at the time it made the sale of its business assets. It no longer had the seller's permit in its possession. It had given up and relinquished the permit. According to the supreme court, possession is the controlling factor in determining whether a person holding a seller's permit has relinquished that permit. I do not believe the department by administrative regulation can amend the statute or overrule the supreme court.[3]

requirement in the same section of ceasing business before delivering the permit to the department. In fact, the department seems to be playing Catch-22 games with a purchasing retailer who does not wish to terminate the operation of the business being purchased. The timing problem would be obviated if the department would follow the *Three Lions* decision and apply the law so that an occasional sale is not taxed if the seller has relinquished possession of the seller's permit. A letter is surrendered when it is deposited in the United States mail. "Mailing is sufficient to satisfy the legal requirements imposed in the day-to-day conduct of business." *Mansfield v. Smith,* 88 Wis. 2d 575, 588, 277 N.W.2d 740, 746 (1979). Service by mail is complete when the paper to be filed is deposited in the post office with the proper amount of postage. *Schroedel Corp. v. State Highway Comm.,* 38 Wis. 2d 424, 428, 157 N.W.2d 562, 564 (1968). Reliance on an affidavit of deposit in the mail rather than a postmark would not leave the surrendering permit holder subject to the vagaries of the operation of the United States Postal Service.

[3]*See Aetna Life Ins. Co. v. Mitchell,* 101 Wis. 2d 90, 110, 303 N.W.2d 639, 648 (1981) (rules which would require insurance companies to violate a state statute would be unreasonable).

Because I believe *Three Lions* requires that we find that the sale of Fiedler Foods was an occasional sale, not subject to a sales tax, I dissent.