CARRION CORPORATION, Petitioner-Appellant,†

v.

Wisconsin DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 92–1775. Submitted on briefs April 2, 1993.—Decided September 9, 1993.*

(Also reported in 507 N.W.2d 356.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Lawrence A. Trebon* of *Trebon & Polsky* of Milwaukee.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Peter C. Anderson,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Carrion Corporation appeals from an order affirming a decision of the Wisconsin Tax Appeals Commission. The commission upheld a sales and use tax assessment against Carrion (formerly known as Adelman Laundry and Cleaners, Inc.) in connection with sales of the assets of its commercial and retail laundry divisions. The Department of Revenue

audited Carrion's sales and use taxes returns for the period January 1, 1979, to February 18, 1983, and assessed additional taxes against the company. Carrion appealed the assessment to the commission and then to the circuit court, and the department's action was affirmed in both instances.

The issues are: (1) whether Carrion's sales of its retail and commercial divisions qualified as "occasional sales" and were thus exempt from taxation under sec. 77.54(7), Stats. (1981–82);[1] (2) whether the commission properly taxed the entire asset sale proceeds; (3) whether the commission erroneously valued the amount of tangible property included in the sale of Carrion's commercial division; (4) whether the First Wisconsin National Bank, and not Carrion, was the "taxpayer-in-fact" during a period of time covered by the assessment and thus is liable for the taxes; (5) whether certain equipment sales should have been excluded from the assessment because they were made to out-of-state buyers; (6) whether the commission erroneously assessed use taxes on Carrion's purchases of materials from out-of-state vendors in two of the four years covered by the department's audit; and (7) whether the commission erred in assessing a twenty-five percent penalty for Carrion's "neglect" in filing incorrect sales and use taxes.

We reject each of Carrion's challenges to the commission's decision and affirm the order.

---

[1] Generally, sales taxes are imposed on retail sales by persons and business organizations engaged in the business of selling. Where, however, a person or organization makes only "occasional sales," such sales are exempt from taxation under ch. 77, Stats. Section 77.54(7), Stats.

In this opinion, our references to ch. 77, Stats., will refer to Wisconsin Statutes 1981–82, unless otherwise noted.

261

## I. Background

Prior to February 1983, Carrion was in the laundry and dry-cleaning business, operating both commercial and retail divisions. Its commercial division was engaged primarily in serving hospitals and nursing homes through a pickup and delivery service. The retail division handled laundry and dry-cleaning accounts for hotels and restaurants and served the general public through several retail outlets and truck routes.

In early 1982, Carrion was experiencing serious financial difficulties. By midyear, it was in substantial default on loans from First Wisconsin National Bank of Milwaukee and, under pressure from the bank, changed its leadership and moved to sell its laundry business and liquidate its assets.

On January 17, 1983, Carrion sold its retail division to D.S. Nicholas of Wisconsin, Inc., for $1,401,618.04 — $40,000 of which was paid in cash and the remainder to be paid over time pursuant to a promissory note. Of this price, $602,553 was allocated to tangible personal property. Nicholas never paid any of the principal of the promissory note.

Approximately one month later, on February 18, 1983, Carrion sold its commercial division to Tousey Laundry Corp. for $600,000. $400,000 of the sales price was allocated to tangible personal property, and the entire amount was to be paid pursuant to a promissory note.

While, as indicated, Nicholas never made any principal payments — and Tousey paid only $200,000 to $300,000 on its note — First Wisconsin provided full credit to Carrion on both notes.

Less than an hour before finalizing the Nicholas sale on January 17, Carrion attempted to surrender its

seller's permit to the department.[2] It assumed that, by doing so, it would qualify the sales of both divisions as "occasional sales" not made in the course of its business as a seller of personal property or services within the meaning of sec. 77.51(10)(a), Stats., and thus be exempt from taxation.

Carrion filed sales and use tax returns for the period during which the division sales occurred and they were audited by the department. The audit culminated with the issuance of a sales and use tax assessment against the company for $66,908.81, plus interest and penalties. The department also assessed $30,126.65 in sales taxes on the sale of the retail division's tangible personal property, $22,905 in sales taxes on the sale of the commercial division's tangible personal property, $5,883.34 in sales taxes on the sale of $145,850 worth of miscellaneous equipment between October 1981 and October 1982, and $7,993.82 in use taxes on Carrion's out-of-state purchases of $197,805 worth of tangible property. The department also imposed a twenty-five percent penalty on the last two items, pursuant to sec. 77.60(3), Stats., which provides a penalty for filing incorrect returns.

Carrion petitioned the department for a redetermination of the assessment, and the matter remained pending for several years. The petition was finally denied in 1988 and, as we have indicated, the company's appeals to the commission and the circuit court were rejected.

---

[2] Carrion held a single seller's permit for its entire operation. On the day it had intended to surrender the permit, Carrion was unable to locate it and instead tendered a letter to the DOR in lieu of actual surrender.

## II. Scope of Review

On appeal, we review the decision of the agency, not that of the circuit court. *Wisconsin Pub. Serv. Corp. v. Public Serv. Comm'n*, 156 Wis. 2d 611, 616, 457 N.W.2d 502, 504 (Ct. App. 1990). Our review of the commission's findings of fact is governed by sec. 227.57(6), Stats.:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action . . . if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.

Substantial evidence is that degree of evidence which would allow a reasonable mind to reach the same conclusion as the agency. *Madison Gas & Elec. Co. v. Public Serv. Comm'n*, 150 Wis. 2d 186, 191, 441 N.W.2d 311, 314 (Ct. App. 1989).

The appeal also involves review of the commission's interpretation and application of statutes — issues of law which we generally review *de novo*. We do, however, accord varying degrees of deference to an administrative agency's interpretation of a statute it has been legislatively charged to administer. *Lisney v. LIRC*, 171 Wis. 2d 499, 505, 493 N.W.2d 14, 16 (1992); *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11–12, 357 N.W.2d 534, 539 (1984). Thus, we will defer to the agency's interpretation of such a statute when that interpretation "is of long standing" or "entails its exper-

tise, technical competence and specialized knowledge," or when "through interpretation and application of the statute, the agency can provide uniformity and consistency in the field of its specialized knowledge." *Id.* The supreme court also has held that "[w]here a legal question is intertwined with factual determinations or with value or policy determinations . . . [we] should defer to the agency which has primary responsibility for determination of fact and policy." *West Bend*, 121 Wis. 2d at 12, 357 N.W.2d at 539–40.

■

And while the degree of deference owed to such interpretations has variously been described in the cases as "great weight," *id.* at 13, 357 N.W.2d at 540, "due weight" or "great bearing," *Beloit Educ. Ass'n v. WERC*, 73 Wis. 2d 43, 68, 242 N.W.2d 231, 243 (1976), we believe the most recent statements on the subject by the supreme court have solidified the rule to provide that in cases where deference is appropriate under the standards just discussed, the deference to be accorded the agency's interpretation — however it may be characterized — is this: "[W]e will affirm the [agency's] interpretation of the statute if it is reasonable, even if another conclusion would be equally reasonable." *DILHR v. LIRC*, 161 Wis. 2d 231, 245, 467 N.W.2d 545, 550 (1991); *see also Lisney*, 171 Wis. 2d at 506 n.3, 493 N.W.2d at 16. Stated conversely, "[a] court does not . . . give deference to an agency's interpretation of a statute when the court concludes that the agency's interpretation directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise unreasonable or without rational basis." *Id.* at 506, 493 N.W.2d at 16.[3]

---

[3] Where the agency's interpretation goes against the language of the statute being interpreted, or its legislative intent

### III.  Carrion's Claims

*Occasional Sales Exemption*

In Wisconsin, persons and business organizations in the business of selling personal property or services are subject to the state sales tax under sec. 77.52, Stats., and must hold a seller's permit as long as they remain in the business of making sales. Persons or companies not in the business of selling, but who only make "occasional" sales of personal property, are exempt from the tax. Section 77.54(7), Stats. Under sec. 77.51(10)(a), Stats., however, "[n]o sale of any tangible personal property . . . may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit . . . ."

Thus, anyone who continues to make sales in a business — after the business has been sold — cannot qualify for the occasional sale exemption on the sale of business assets. And, we noted in *Fiedler Foods, Inc. v. DOR*, 142 Wis. 2d 722, 726–27, 419 N.W.2d 311, 313 (Ct. App. 1987), a seller liquidating its business must "surrender [its] seller's permit prior to closing the sale" if it wishes to avoid paying tax on the sale.

---

— or if it is inconsistent with the constitution or judicial authority — it is, by definition, unreasonable. *See Lisney*, 171 Wis. 2d at 507, 493 N.W.2d at 16.

And, finally, where the case is one of first impression — where "there is no evidence [that the agency has] any special expertise or experience" on the subject matter of the statute being interpreted — "the weight to be afforded [the] agency interpretation is no weight at all." *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990).

Finally, because Carrion is claiming entitlement to an exemption, it has the burden of proof on the issue. Tax exemptions are "matters of legislative grace" and, as such, are "strictly construed against the granting of the same." *Ramrod, Inc. v. DOR*, 64 Wis. 2d 499, 504, 219 N.W.2d 604, 607 (1974). Thus, "[o]ne who claims such an exemption must . . . bring himself [or herself] clearly within the terms of the exemption," *id.*, and all doubts or ambiguities will be resolved in favor of taxation and against the person claiming the exemption. *Village of Menomonee Falls v. Falls Rental World*, 135 Wis. 2d 393, 396, 400 N.W.2d 478, 479 (Ct. App. 1986); *Ladish Malting Co. v. DOR*, 98 Wis. 2d 496, 502, 297 N.W.2d 56, 58 (Ct. App. 1980).

The commission's ruling that Carrion's sales of its assets did not qualify as "occasional sales" under sec. 77.54(7), Stats., was based in large part on the fact that Carrion had filed sales and use tax returns for sales occurring after the "attempted surrender" of its seller's permit on January 17, 1983, and that the company had failed to offer a "credible explanation" of the taxable sales occurring after that date. The commission concluded that Carrion "failed to prove that it did not hold or was not required to hold a seller's permit on [or before] January 17, 1983," and was thus ineligible to claim the occasional sale exemption.

Carrion argues that that is not enough: that the issue is not whether it held, or was required to hold, a seller's permit during the period in question, but whether it was "actively operating" as a seller at that time. But sec. 77.52(13), Stats., provides that "[f]or the purpose of the proper administration of this section and to prevent evasion of the sales tax it shall be presumed that all receipts are subject to the tax until the

267

contrary is established." Carrion has the burden of establishing that the sales are not taxable.

There is evidence in the record that in January and February Carrion filed sales and use tax returns reporting taxable receipts for both months: $77,442 in January and $2,088.20 in February.

Carrion contends, however, that there is no evidence that any taxable sales were made after January 15, relying on the testimony of two of its witnesses who testified that after January 17, 1983, Carrion's customers consisted only of institutions which were exempt from sales tax. However, none of Carrion's witnesses was able to explain the source of the January and February receipts or what they in fact represented, if they did not represent taxable sales in those months; and Carrion concedes that it is unable to establish what those receipts represented. Based on that inability, the commission determined that Carrion's evidence was insufficient to rebut the presumption that taxable sales were made during that period and thus the company had "failed to prove that it did not hold or was not required to hold a seller's permit on January 17, 1983 or subsequent thereto." Carrion has similarly failed to establish on appeal that the commission's determination is either unreasonable or lacks support in the record.

We also agree with the department that Carrion is incorrect in maintaining that the evidence of its continued taxable sales was comprised solely of its filing of the February return showing $2,088.20 in taxable receipts. As noted above, Carrion sold its commercial division assets on February 18, 1983 — approximately one month after it sold the retail division assets. The sale documents listed Carrion's commercial customers, including the University Club, and Carrion acknowl-

edges that its sales to the University Club were not tax-exempt. And while Carrion claimed generally that listing the University Club account was a "mistake," it did not elaborate further; and there were, in addition, deposits made to Carrion's account as late as February 14, 1983, whose source was identified as the University Club.

In affirming the department's assessment, the commission stated that: "No credible explanation was provided for [the February] sales other than a mistake in reporting them as taxable. An admission against one['s] self requires more evidence than an unexplained mistake with no testimony from the preparer or other valid evidence to support . . . a . . . theory of mistake."

Carrion indeed attempted to surrender its seller's permit immediately prior to the January 17, 1983, retail division asset sale. However, the commission could reasonably conclude on the evidence before it that the company's continued taxable sales after that date rendered the attempted surrender ineffective, with the result that at the time of both the retail and commercial division sales, the company held, or was required to hold, a seller's permit. It is a harsh result but, as we have noted above, the test is whether the commission's determination has a rational basis. If it does — and we so conclude here — "[the] reviewing court will sustain [the] agency's view even though [an] alternative view may be equally reasonable." *Fiedler Foods*, 142 Wis. 2d at 728, 419 N.W.2d at 314.[4]

[4] We agree with the department that Carrion's position in this case is less compelling than that of the taxpayer in *Fiedler Foods*, where we also upheld the denial of an occasional sale exemption. In that case the taxpayer, wanting to operate up to

## *Taxation of 100% of the Sales Proceeds*

As we have noted above, the purchasers of the two laundry divisions did not pay the notes executed in connection with the sale. Nicholas made no principal payments on the note given for the purchase of the retail division, and Tousey failed to pay between $100,000 and $200,000 of the total principal due on the note for the commercial division. Carrion argues that because the notes were not paid in full, it should not be subject to tax liability on the portions of the purchase price that were never paid.

In support of the argument Carrion refers us to sec. 77.51(11)(b)4, Stats., and Wis. Adm. Code sec. Tax 11.30(2)(a), which provide that a retailer is relieved from sales tax liability with respect to "accounts" which have been found to be worthless and charged off for income tax purposes. When the notes went unpaid, however, First Wisconsin provided full credit to Carrion, in the form of debt repayment, for the aggregate principal amounts of the notes. Carrion does not dispute that this in fact occurred, and it thus appears that the company enjoyed the full benefit of the notes. That

---

the time of the sale of the business assets, took its final inventory on a Saturday and placed its seller's permit in the mail at 11:00 p.m. that night. Applicable rules provided that where permits are returned by mail, they are deemed delivered to the department at 12:01 a.m. on the date of the postmark. In Fiedler Foods' case, the post office was closed on Saturday and Sunday and the envelope was not postmarked until Monday, after the sale of business assets had occurred. We concluded that, on these facts, the commission could reasonably conclude that the taxpayer continued to hold its permit at the time of the asset sale and thus was not entitled to the occasional sale exemption.

being the case, it cannot now claim they were worthless and thus not a proper subject of taxation. The commission's determination that tax was due on the entire value of the notes is supported by substantial evidence in the record and survives Carrion's challenge.

### Assessment of Commercial Division Assets

Carrion next argues that the department's assessment of the amount of tangible personal property included in the sale of the commercial division erroneously overstated the purchase price by $58,100. We disagree.

The department's auditor valued the tangible personal property included in the sale of the commercial division at $458,100. He testified that he arrived at that value after inspecting and analyzing various documents associated with the sale, including an asset-by-asset calculation of the value of the property based on written interoffice communications concerning the sale between Carrion's two principal officers. Carrion, on the other hand, points to Tousey's asset purchase agreement, which allocates $400,000 of the sales price to tangible personal property and $55,000 to real estate.

The commission found, however, that "[t]he best credible evidence on [the] issue was supplied by the Department auditor's testimony" and explained why it believed that was so. The commission also noted that Carrion was unable to offer evidence as to whether trade fixtures were included in the "real estate" allocation in the agreement and thus could not effectively counter the auditor's allocation.

Whether the department auditor's figures were accurate is a factual issue turning on the commission's

271

weighing of the evidence and the credibility of the witnesses' testimony. As a result, the commission's resolution of the issue is entitled to considerable deference, for "the reviewing court will not independently weigh the evidence or pass on the credibility of witnesses." *Holtz & Krause, Inc. v. DNR*, 85 Wis. 2d 198, 204, 270 N.W.2d 409, 413 (1978). Because there is substantial credible evidence in the record to support the commission's determination, we may not upset it.

### *"Taxpayer-In-Fact"*

Carrion next argues that it should be relieved of any liability for the taxes because First Wisconsin was the real party in interest in the transaction and should be liable for any taxes assessed.

As noted above, First Wisconsin was a substantial creditor of Carrion and took certain steps to protect its interests when the company's business began to fail. Carrion claims that, by these actions, the bank took actual "control" of the business and thus became the "taxpayer-in-fact" during the period covered by the assessment. Thus, says Carrion, the bank, not it, should be responsible for any taxes incurred during that time. It bases the argument on the bank's actions in directing Carrion to replace its corporate leadership and to liquidate its assets, and it asserts that, among other things, the bank "ran" the laundry business by "monitoring [its] activities," "determin[ing] which bills would be paid," and "negotiat[ing] the terms of the sale . . . to Nicholas and order[ing Carrion] to accept the deal." The factual assertions, however, are not accompanied by any reference to the record, and, as we have often said, it is not our duty to "sift and glean the record . . . to find facts to support an alleged error." *Zintek v.*

*Perchik*, 163 Wis. 2d 439, 482–83, 471 N.W.2d 522, 539 (Ct. App. 1991). We do not address arguments unsubstantiated by references to the record. *Dieck v. Antigo School Dist.*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565, 571 (Ct. App. 1990), *aff'd*, 165 Wis. 2d 458, 477 N.W.2d 613 (1991).

Even so, the commission determined that, whatever influence the bank may have asserted as a secured creditor of Carrion, such influence did not "transform [it] into the seller" with respect to liability for the assessed taxes, and that Carrion had failed to prove that the bank should be held responsible for the taxes in Carrion's place. The commission found that, despite the fact that Carrion may have acquiesced in the bank's wishes on matters relating to the sale, "[t]here was no evidence presented that would convince this Commission that the secured creditor had been the actual seller."

Again, the commission's factual determinations find support in the evidence and its conclusions based on that evidence are not unreasonable. That being so, we will not overturn its decision on the point.

### Inclusion of Out-of-State Sales

Carrion next contends that of the $145,850 in sales of miscellaneous equipment included in the department's assessment, $99,835 of the total represented sales made to several out-of-state buyers and thus was not subject to the Wisconsin sales tax. The commission upheld the full assessment, stating that "[w]hile [Carrion] raises the issue that they could have been out of state sales, no credible evidence was presented at the hearing to support this [assertion]."

273

Carrion claims that evidence that some of its customers had paid taxes on the transactions in their own states compels reversal of the commission on this issue. Again, we disagree. The letters Carrion points to were written approximately one year after the audit, and they are silent as to who had arranged the shipments or was responsible for them. The commission's determination that Carrion had failed to carry its burden of rebutting the presumption of taxability finds support in the record, and its determination that the two letters, by themselves, were unpersuasive on the issue is not unreasonable.

Carrion also argues briefly that we should nonetheless reverse on this point because the "auditor made no attempt to determine whether the taxable receipts reported . . . on its sales and use tax returns included the miscellaneous equipment sales." It does not explain the argument further and thus provides us with no basis to overturn the commission's determination on the point. *See Fritz v. McGrath*, 146 Wis. 2d 681, 686, 431 N.W.2d 751, 753 (Ct. App. 1988) (appellate court does not consider arguments "broadly stated but never specifically argued").

Finally, we note that the commission rejected Carrion's argument with the following finding:

> The witnesses in testifying on behalf of [Carrion] had a lack of knowledge as to how the returns were prepared. No records were produced to show that the . . . audit with reference to miscellaneous equipment sales [was] in error. It is the burden of the taxpayer to show the Department incorrect. The taxpayer failed to do so.

The auditor testified in detail as to his methodology for tracing Carrion's reported taxable sales to the

revenues of each of its outlets, and his testimony provides an adequate evidentiary basis for the commission's rejection of Carrion's argument on the point.

*Use Tax Assessment of Out-of-State Purchases*

Carrion next challenges the department's assessment of use taxes on purchases of materials from out-of-state sellers in 1979 and 1980, claiming that the purchases should have been excluded from taxation pursuant to sec. 77.53(17), Stats. The statute provides in pertinent part:

> This section [imposing the use tax] does not apply to tangible personal property purchased outside this state . . . which is brought into this state *by a nondomiciliary* for the person's own storage, use or other consumption while temporarily within this state *when such property is not . . . used . . . in the conduct of a . . . business* . . . . (Emphasis added.)

■■■■

In its brief, Carrion cites authority for the proposition that taxes may be imposed only by clear and express language, and that any ambiguities as to applicability of the tax should be resolved against taxation,[5] but it does not posit how or why sec. 77.53(17), Stats., should be considered ambiguous. Again, we need not consider arguments raised — here only suggested — but never explained. *Fritz*, 146 Wis. 2d at 686, 431 N.W.2d at 753. Even so, we see no ambiguity. There is no question that Carrion is not a "nondomiciliary," or that the property purchased was used in its business

---

[5] *See Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51 (1981).

operations. The statute is plain on its face and it is plainly inapplicable to Carrion.

Carrion also suggests that the assessment was improper because the department's auditor did not review Carrion's invoices for the years in question, but "simply assumed" that because the out-of-state vendors had not charged sales taxes on purchases made in 1981 and 1982, and that no use tax had been paid on those purchases, the same would also be true with respect to the 1979 and 1980 purchases.

Carrion, however, never produced invoices for its 1979 and 1980 purchases, and the auditor testified that, because of the company's failure to produce the records, he relied instead on Carrion's purchase journals for the years in question as "the best evidence available" on the subject. We agree with the commission that because Carrion's vendors were not charging the tax in 1981 and 1982, and because Carrion could not produce invoices for 1979 and 1980 to show that the purchases in those years were treated differently, the auditor's testimony as to his reliance on the purchase journals for those years is sufficient to support the commission's findings in this regard.

### The Penalty Assessment

Finally, Carrion challenges the commission's finding that Carrion failed to establish good cause for filing incorrect sales and use tax returns, thereby incurring a twenty-five percent penalty on the taxes due. The basis for the penalty is sec. 77.60(3), Stats., which provides:

> If due to neglect an incorrect return is filed, the entire tax finally determined shall be subject to a penalty of 25% of the tax exclusive of interest or other penalty. A person filing an incorrect return shall have the burden of proving that the error or

276

errors were due to good cause and not due to neglect.

There is no question that Carrion filed incorrect sales and use tax returns. The company argues, however, that this failure was not due to neglect, pointing to the auditor's testimony that it had a workable system for reporting sales and use taxes and kept its records organized and in good condition. Again, Carrion does not elaborate or explain its argument, but we infer from its assertions that its position is that because it had a workable system in place for reporting the taxes, the incorrect returns must have been the result of an employee's excusable error and thus could not be considered "due to [its] neglect." But Carrion does not attempt to explain the difference between "mistake" and "neglect," nor does it put forth any explanation for the purported "mistake" from which we might determine that there was "good cause" for the failure to file a correct return.

The commission rejected Carrion's argument on the basis that Carrion had failed to present any evidence "to show that the incorrect returns were the result of good cause," and the commission concluded, as it had on the other issues raised by Carrion, that the company had failed to meet its burden of establishing error in the department's assessment. Again, we agree.

*By the Court.*—Order affirmed.

SUNDBY, J. (*dissenting*). I dissent from the proposition that the taxpayer's sale of its business was a sale "at retail" which was subject to a retail sales tax under

sec. 77.52(1), Stats. (1981–82).[1] It is undisputed that the taxpayer sold its entire business in two transactions, effective January 17, 1983 (retail division), and February 18, 1983 (commercial division). The sole reason the Tax Appeals Commission affirmed the department's denial of the taxpayer's petition for redetermination of its sales tax liability was that the taxpayer failed to prove that after these sales, it did not continue to make sales at retail.

Section 77.54(7), Stats. (1981–82), exempts from sales and use taxes "occasional sales" of tangible personal property and services. In affirming the department's determination, the commission relied solely on the definition of "occasional sales" in sec. 77.51(10), Stats. (1981–82), which provides:

> "Occasional sales" includes: (a) Isolated and sporadic sales of tangible personal property . . . where the infrequency, in relation to the other circumstances . . . support[s] the inference that the seller is not pursuing a . . . business . . . as a vendor of personal property or taxable services. *No sale of any tangible personal property or taxable service may be deemed an occasional sale if at the time of such sale the seller holds or is required to hold a seller's permit . . . .* [Emphasis added.]

The commission concluded that the taxpayer had failed to prove that after its sale of its retail division, it had not continued to make retail sales. In its opinion the commission concluded that because the taxpayer had filed sales and use tax returns for January and February 1983, it admitted that it made taxable sales after

---

[1] *See also Fiedler Foods, Inc. v. DOR*, 142 Wis. 2d 722, 728, 419 N.W.2d 311, 314 (Ct. App. 1987) (Sundby, J., dissenting).

its attempted surrender of its sales tax permit prior to the sale of its retail division.

I submit that there was no reason for the commission to look beyond sec. 77.52(1), Stats. (1981–82), to determine whether the taxpayer's sales of its retail and commercial divisions were subject to a retail sales tax. The critical inquiry under sec. 77.52(1) is whether the taxpayer has made a sale "at retail."[2] The taxpayer was not required to seek an exemption under sec. 77.54(7), Stats. (1981–82), because it did not make an occasional sale when it sold its business. An examination of sec. 77.54(7) demonstrates that the exemption thereunder applies only when, without the exemption, the sale by the taxpayer would be "at retail" and subject to sales tax.[3] Because it is undisputed that the taxpayer's sales of its retail and commercial divisions

---

[2] I am aware that the taxpayer does not make this precise argument. However, a petition to review our decision is likely. *Gansch v. Nekoosa Papers, Inc.*, 158 Wis. 2d 743, 463 N.W.2d 682 (1990), was decided on an issue first presented in *Gansch v. Nekoosa Papers, Inc.*, 152 Wis. 2d 666, 449 N.W.2d 307 (Ct. App. 1989) (Sundby, J., dissenting), *rev'd,* 158 Wis. 2d 743, 463 N.W.2d 682 (1990). I suggest that it is appropriate for the Wisconsin Supreme Court to consider whether the legislature intended that the taxpayer shall be liable for sales not "at retail" merely because some administrative "glitch," wherever it occurred, makes questionable when the taxpayer surrendered its seller's permit or made its last sale "at retail." The fact that the taxpayer cannot explain (in this case, because of the lapse of time and the destruction of its records) inconsequential receipts after the sale of its business should not transmute that sale into something the undisputed facts show it was not.

[3] Section 77.54(7), Stats. (1981–82), applies to the occasional sale of a motor vehicle, snowmobile, mobile home, trailer, semi-trailer, aircraft, boat, and the like.

279

were not "at retail," I conclude that the commission should have reversed the department's determination.