LINCOLN SAVINGS BANK, S.A., f/k/a Lincoln Savings and
Loan Association, Petitioner-Respondent, †

v.

WISCONSIN DEPARTMENT OF REVENUE, Respondent-
Appellant.

Court of Appeals

*No. 96–0135. Submitted on briefs November 5, 1996.—Decided
December 10, 1996.*

(Also reported in 558 N.W.2d 902.)

†Petition to review granted.

Before Fine, Schudson and Curley, JJ.

FINE, J. The Wisconsin Department of Revenue appeals from the trial court's order reversing an order by the Tax Appeals Commission that assessed additional franchise taxes against Lincoln Savings Bank for the years 1987–1990. We reverse.

## I.

The material facts in this case are not disputed.[1] Lincoln Savings Bank is subject to an annual tax "[f]or the privilege of exercising its franchise or doing business in this state in a corporate capacity." Section 71.23(2), STATS. Under this provision, "every domestic or foreign corporation . . . shall annually pay a franchise tax according to or measured by its entire Wisconsin net income of the preceding taxable year." *Ibid.* Lincoln Savings Bank, formerly Lincoln Savings and Loan Association, was first subjected to franchise-tax liability in 1962.

Both Wisconsin and federal tax law permit institutions like Lincoln Savings Bank to deduct reserves set aside to cover bad debts from their tax liability. Prior to 1987, Wisconsin tax law established a specific mechanism for this deduction. *See* § 71.04(9)(b), STATS. (1985–86).[2] The federal tax-law provision is found in 593 of the Internal Revenue Code, 26 U.S.C. § 593.

Section 71.04(9)(b), STATS. (1985–86), was repealed effective for the "taxable year 1987" as part of the legislature's federalization of Wisconsin's tax law. 1987 Wis. Act 27, § 3203(47)(y). In its place, the legislature defined corporate "net income" for Wisconsin tax purposes (with provisos not pertinent here) as "gross

---

[1] The Tax Appeals Commission adopted the parties' stipulated facts as its findings.

[2] Section 71.04(9)(b), STATS. (1985–86), provided:

Savings and loan associations, mutual savings banks, production credit associations and credit unions may make a deduction for a reasonable addition to reserve for bad debts of 2/3 of such sums as they are required to allocate to their loss reserves pursuant to statutory provisions or rules and regulations or orders of any state or federal governmental supervisory authorities.

income, as computed under the internal revenue code."
1987 Wis. Act 27, § 1268k, amending § 71.02(1)(c)
(intro.), STATS. (1985–86).[3] This provision was
recreated without substantive change as § 71.26(2)(a),
where it resides today. *See* 1987 Wis. Act 312 and 1987
Wis. Act 312, § 16 ("The legislature intends to make no
substantive changes by this act.").[4]

The federalization of Wisconsin's tax law changed
the amount of bad-debt reserves that institutions like
Lincoln Savings Bank could deduct from their income
in order to arrive at their taxable income. The method
of applying bad-debt reserves authorized by Wisconsin
tax law prior to the federalization was less favorable to
the taxpayer than the method under the Internal
Revenue Code. Thus, for example, in 1962, Lincoln was
permitted to make an addition to its bad-debt reserve
for federal tax purposes of $31,561; the 1962 addition to
its bad-debt reserve for Wisconsin tax purposes was
$22,683. In 1986, Lincoln was permitted to make an
addition to its bad-debt reserve for federal tax purposes
of $599,804; the addition to its bad-debt reserve for
Wisconsin tax purposes in that year was $320,268. For
the years 1962 through 1986, Lincoln Savings Bank's
federal bad-debt reserve balance equalled $3,375,023;
Lincoln's Wisconsin bad-debt reserve balance for that
period was $2,608,622.

Federalization of the corporate-tax liability in
Wisconsin resulted in changes in the tax treatment of
myriad items for all corporations (not just institutions

---

[3] Prior to the amendment, the section read, as material here
(and omitting certain provisos): "'Net income' means, for
corporations, 'gross income' less allowable deductions." Section
71.02(1)(c) (intro.), STATS. (1985–86).

[4] Amendments not material here were made to § 71.26(2)
(a), STATS., by 1987 Wis. Act 411, § 125.

like Lincoln Savings Bank), and the legislature enacted a transition mechanism to equalize the differences, and made it applicable to corporations generally. This non-statutory transition provision, 1987 Wis. Act 27, § 3047(1)(a) provides:

> Each corporation shall calculate, as of the close of its taxable year 1986, the amount that, because of this act, is required to be added to, or subtracted from, income in order to avoid the double inclusion, or omission, of any item of income, loss or deduction, except that the adjustments required to the deductions for depreciation and amortization shall be made under section 71.02 (1) (c) (intro.) of the statutes, as affected by this act. If the amount required to be added or subtracted is $25,000 or less, the proper amount shall be added or subtracted for taxable year 1987. If the amount required to be added or subtracted is more than $25,000, it shall be added or subtracted in amounts as nearly equal as possible over the 5 taxable years beginning with 1987, except that if the final taxable year that the corporation is subject to tax under chapter 71 of the statutes, as affected by this act, occurs before the total amount is added or subtracted all of the remaining amount shall be added or subtracted for that final taxable year.

Significantly, § 3047(1)(a) directs that calculations reflecting necessary adjustments are to be made "as of the close of [the corporate taxpayer's] taxable year 1986" and are to account for past differences between the federal and state tax treatment of the same items.

The parties agree that Lincoln Savings Bank is a "corporation" as that word is used in § 3047(1)(a), and that the section permits Lincoln to subtract the excess of the federal bad-debt-reserve over the Wisconsin bad-

debt-reserve from Lincoln's Wisconsin tax liability, pursuant to the five-year schedule in § 3047(1)(a). The only dispute between the parties is whether Lincoln may subtract its pre-1962 balance of bad-debt reserves for federal tax purposes, which accumulated *before* it was subject to the Wisconsin franchise tax.[5] The Tax Appeals Commission held that it could not; the trial court held that it could.

## II.

"Courts are not bound by an agency's conclusions of law." *West Bend Education Ass'n v. ERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). Nevertheless, where the legal question is within the agency's "experience, technical competence and specialized knowledge," courts defer to the agency's legal analysis and determination by giving them "great weight." *Id.*, 121 Wis. 2d at 12–13, 357 N.W.2d at 539–540. If the issue presented is one of first impression, as it is here, then only "due weight" is accorded to the agency's legal analysis and conclusions, *id.*, 121 Wis. 2d at 12 n.12, 357 N.W.2d at 540 n.12, which may be "no weight at all," *Carrion Corp. v. Wisconsin Department of Revenue*, 179 Wis. 2d 254, 265 n.3, 507 N.W.2d 356, 359 n.3 (Ct. App. 1993). The Department, on the other hand, argues that we should give significant deference to the Commission's decision because "[a]lthough the Commission may have been interpreting the statute at issue for the first time, it has abundant experience in

---

[5] In 1961, Lincoln Savings Bank's balance of its bad-debt reserve for federal tax purposes was $309,743. Lincoln had no bad-debt reserve for Wisconsin tax purposes because it was not subject to the franchise tax prior to 1962.

dealing with complex tax statutes such as the transitional adjustment statute at issue in this case."

As intriguing as are the parties' arguments about the degree of deference that we must give to the Commission's decision, we need not resolve that multi-layered conundrum here because even under *de novo* review we believe that the Commission's decision was correct. "Absent a constitutional infirmity, courts must apply statutes as they are written, unless to do so would lead to an absurd result that did not reflect the legislature's intent." *State v. Young*, 180 Wis. 2d 700, 704, 511 N.W.2d 309, 311 (Ct. App. 1993), *aff'd by an equally divided court*, 191 Wis. 2d 393, 528 N.W.2d 417 (1995). "Statutory analysis begins with an examination of the language of the statute itself to determine whether the language is clear or ambiguous. If the language is clear, a court must give effect to the plain meaning." *State v. Dwyer*, 181 Wis. 2d 826, 836, 512 N.W.2d 233, 236 (Ct. App. 1994) (internal citations omitted).

The operative portion of the statute here—the provision that applies to Lincoln Savings Bank—is clear and not ambiguous. Thus, we also do not discuss whether § 3047(1)(a) is a "deduction" statute, which should be "strictly construed" against the taxpayer, as the Department argues, *see Ramrod, Inc. v. Department of Revenue*, 64 Wis. 2d 499, 504, 219 N.W.2d 604, 607 (1974), or whether it is a "remedial" statute to be construed liberally, as Lincoln Savings Bank argues, *see Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976) (antitrust laws remedial). The rules of statutory construction are applicable only when the statute is ambiguous.

*Department of Revenue v. Bailey-Bohrman Steel Corp.,*
93 Wis. 2d 602, 607, 287 N.W.2d 715, 717–718 (1980).

Section 3047(1)(a) provides: "Each corporation shall calculate . . . the amount that . . . is required to be . . . subtracted from[ ] income in order to avoid . . . omission[ ] of any item of . . . deduction."[6] Eliminating the ellipses and brackets (inserted to show removal of commas unnecessary to our analysis), the material part of the statute reads:

> Each corporation shall calculate the amount that is required to be subtracted from income in order to avoid omission of any item of deduction.

In other words, the statute permits the taxpayer to recoup (or "avoid omission" of) the excess of the federal deduction for a bad-debt reserve over the Wisconsin deduction for the years prior to federalization of the Wisconsin tax law.[7]

---

[6] We reject Lincoln Savings Bank's view that § 3047(1)(a) is also designed to avoid a "double" omission. First, placement of the comma indicates that "double" modifies the word "inclusion"—not the word "omission." Second, Lincoln does not explain how federalization could result in a double omission "of any item of income, loss or deduction," § 3047(1)(a), or, if that were possible, how that is relevant here.

[7] Although Lincoln Savings Bank argues that the provision was designed to prevent potential future inequities flowing from federalization of Wisconsin's tax laws, rather than recoup past deductions that would have been available if Wisconsin's tax law had been federalized earlier, it offers no support for that view, either in the provision's legislative history or otherwise. Moreover, Lincoln's speculative hypotheticals about what could happen in the future if either its status or the applicable law is changed do not warrant our ignoring the clear language of § 3047(1)(a). *See Gaines v. City of New York,* 109 N.E. 594, 596 (N.Y. 1915) ("Grotesque or fanciful situations, such as those

As we have already seen, Lincoln first became subject to Wisconsin's franchise tax in 1962. Prior to 1962, it could not have taken *any* deduction from its franchise-tax liability for additions to its bad-debt reserve because it did not owe *any* franchise tax. Thus, its pre-1962 federal bad-debt reserves are not "required to be subtracted" from Lincoln's income "in order to avoid omission" of that pre-1962 bad-debt-loss-reserve deduction. The Commission correctly applied the non-statutory transition provision 1987 Wis. Act 27, § 3047(1)(a) to Lincoln Savings Bank.

*By the Court.*—Order reversed.

supposed, will have to be dealt with when they arise.") (Cardozo, J.).