KENWOOD MERCHANDISING CORPORATION and Transamerica Insurance Company, Plaintiffs-Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Clifford R. Warwick, Defendants-Respondents.

Court of Appeals

*No. 82–2023. Submitted on briefs June 1, 1983.—Decided July 11, 1983.*
(Also reported in 338 N.W.2d 312.)

For the appellants the cause was submitted on the briefs of *Kasdorf, Dall, Lewis & Swietlik, S.C.,* with *Nonald J. Lewis* and *Patti J. Kurth* of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Gordon Samuelsen,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J.   Kenwood Merchandising Corporation and its insurer, Transamerica Insurance Company, (Kenwood) appeal from a judgment of the trial court entered September 22, 1982, wherein the trial court affirmed an order of the Labor and Industry Review Commission (LIRC), dated January 15, 1981, which affirmed a hearing examiner's award of permanent partial disability and lost earnings due to disfigurement to Clifford R. Warwick (Warwick). We affirm.

On May 7, 1976, Warwick, while employed by Kenwood, was injured when his right hand was cut by the blade of a table saw. As a result of this accident, Warwick's right thumb, index and middle fingers were amputated. Following several surgeries Warwick returned to work at Kenwood; however, he left Kenwood in February, 1977, because it was experiencing financial difficulties.

Following course work in accounting, Warwick obtained a position as a teller with Elm Grove Savings & Loan Association. Warwick advanced into a management training program. While in training, Warwick accepted a position as branch manager of Mitchell Savings & Loan.

At the time of the hearing, Warwick was making $13,200 and benefits at Mitchell.

A worker's compensation hearing was held March 19, 1980. Prior to this hearing, Kenwood's insurer paid Warwick $2,458.88 as temporary total disability and $7,378.08 as permanent partial disability. Following the hearing, the examiner awarded Warwick $5,770 as lost earnings due to disfigurement and an additional $5,717.10 as permanent partial disability.

Kenwood filed a petition for review with the LIRC which affirmed the examiner's findings and order on January 15, 1981. On February 17, 1981, Kenwood filed a summons and complaint with the circuit court seeking review of the LIRC's order. The trial court affirmed the LIRC's order on September 7, 1983. Judgment was entered September 22, 1982, from which Kenwood appeals.

On appeal Kenwood raises the following issues:

(1) whether there was sufficient evidence established to support the finding that Warwick was entitled to a loss of earnings award due to disfigurement pursuant to sec. 102.56, Stats. (1975);

(2) whether the LIRC is authorized to make an award for both permanent partial disability and disfigurement for the same body member;

(3) whether sec. 102.56, Stats. (1975), is unconstitutional because it denies a party to a worker's compensation claim due process;

(4) whether sec. 102.56, Stats. (1975), is unconstitutional because it represents an unlawful delegation of power under article IV, section 1 of the Wisconsin Constitution; and,

(5) whether there was credible evidence established to support the additional award of permanent partial disability.

## SUFFICIENCY OF EVIDENCE TO ESTABLISH DISFIGUREMENT AWARD

Kenwood argues that the record fails to establish a basis upon which Warwick could be awarded $5,770 as loss of earnings due to disfigurement. We disagree.

In the absence of fraud, findings of fact made by the LIRC acting within its powers are conclusive.[1] An appellate court may reverse a decision of the LIRC only upon the following grounds: (1) That the LIRC acted without or in excess of its powers; (2) That the order or award was procured by fraud; or (3) That the findings of fact by the LIRC do not support the order or award.[2] Although the LIRC's findings of fact are conclusive as long as they are supported by credible and substantial evidence, any legal conclusions drawn by the LIRC from its findings of fact are subject to judicial review.[3] An appellate court is not bound by the LIRC's conclusions on a question of law; however, if the LIRC's legal conclusions are reasonable, we will sustain the LIRC's view even though an alternative view may be equally reasonable.[4]

The issue of whether Warwick's disfigurement would occasion potential wage loss presents a mixed question of fact and law. The nature of Warwick's disfigurement and the extent to which his present occupation requires public contact are questions of fact. Whether Warwick's kind of disfigurement will "occasion potential wage loss" in the banking industry is a question of law.[5]

[1] Sec. 102.23(1), Stats.

[2] Sec. 102.23(1)(d), Stats.

[3] *Wehr Steel Co. v. DILHR*, 106 Wis. 2d 111, 117, 315 N.W.2d 357, 361 (1982).

[4] *United Way v. DILHR*, 105 Wis. 2d 447, 453, 313 N.W.2d 858, 861 (Ct. App. 1981).

[5] *See Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979).

There is no question that Warwick was permanently disfigured as a result of this accident. Kenwood argues, however, that there was no indication that he was so permanently disfigured "as to occasion potential wage loss."

The examiner carefully reviewed Warwick's disfigurement and noted that his right hand is visible when he comes in contact with customers. The examiner also noted that customers sometimes pull back their hands instead of shaking Warwick's when they notice the injury.

We have reviewed the hearing transcript and, although Warwick's earning potential has increased since the accident, conclude that the LIRC's conclusion that Warwick's disfigurement will occasion potential wage loss is reasonable. Accordingly, we sustain it.

## AWARD OF BOTH PERMANENT PARTIAL DISABILITY AND DISFIGUREMENT

Kenwood next argues that the LIRC has no authority to give a disfigurement award where an award of permanent partial disability has also been made. We disagree.

We need not be detained long by this issue. Section 102.56, Stats. (1975), allows a worker's compensation claimant to receive an award for the potential loss of wages if he is "so permanently disfigured as to occasion potential loss of wage." While there is no Wisconsin case law authority for awarding both permanent partial disability and disfigurement, we believe that the clear legislative policy behind sec. 102.56 is to allow for an additional award for potential loss of wages due to severe disfigurement.[6] To hold otherwise would be to emasculate

[6] *See generally* 2 A. Larson, The Law of Workmen's Compensation § 58.31, at 10–296—10–297 (1982).

sec. 102.56 and frustrate the purpose of the worker's compensation act. Accordingly, we hold that the LIRC correctly awarded Warwick both permanent partial disability and disfigurement.

### CONSTITUTIONALITY OF SECTION 102.56, STATS. (1975)

Kenwood next argues that sec. 102.56, Stats. (1975), is unconstitutional. Kenwood contends that it is unconstitutional for two reasons: (1) it denies a party to a worker's compensation claim due process; and (2) it represents an unlawful delegation of power under article IV, section 1, of the Wisconsin Constitution. We conclude that sec. 102.56 is constitutional.

Due Process

Kenwood's first constitutional challenge to sec. 102.56, Stats. (1975), is based on its contention that sec. 102.56, which was in effect at the time this action was initiated, denies it its fourteenth amendment right to due process. Kenwood maintains sec. 102.56 did not specify the guidelines and standards necessary to rebut Warwick's claim for disfigurement and accordingly it was denied its due process right to a fair trial.

Section 102.56, Stats. (1975), reads as follows: "If an employe is so permanently disfigured as to occasion potential loss of wage, the department may allow such sum for compensation on account thereof, as it deems just, not exceeding his average annual earnings as defined in s. 102.11."

The legislature amended this statute, effective January 1, 1978.[7] It now reads:

If an employe is so permanently disfigured as to occasion potential wage loss, the department may allow such sum

[7] Sec. 39, ch. 195, Laws of 1977, effective January 1, 1978.

as it deems just as compensation therefor, not exceeding the employe's average annual earnings as defined in s. 102.11. In determining the potential for wage loss and the sum awarded, the department shall take into account the age, education, training and previous experience and earnings of the employe, the employe's present occupation and earnings and likelihood of future suitable occupational change. Consideration for disfigurement allowance is confined to those areas of the body that are exposed in the normal course of employment. The department shall also take into account the appearance of the disfigurement, its location, and the likelihood of its exposure in occupations for which the employe is suited.

Kenwood concedes that sec. 102.56, Stats. (1981), is now constitutional because, as amended, it contains objective criteria for determining a potential wage loss which, in effect, apprises the parties of what standards and guidelines are to be used to determine an award of disfigurement.

The burden is upon Kenwood to establish beyond a reasonable doubt that the statue and this court's asserted construction of it is unconstitutional.[8] Our supreme court has stated:

It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, whenever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.[9]

[8] *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 187, 290 N.W.2d 276, 283 (1980).

[9] *Id.*, quoting *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973).

With this strict standard of review in mind, we conclude that sec. 102.56, Stats. (1975), as applied to Kenwood, was constitutional. Kenwood's claim of denial of a fair trial is without merit. The evidence presented to the examiner was sufficient to establish a disfigurement claim under the amended version of sec. 102.56, which Kenwood concedes is constitutional. The record establishes that the examiner considered all of the required criteria. Accordingly, we hold that Kenwood has failed to meet its burden of establishing that the statute in question is unconstitutional on due process grounds.

Delegation of Powers

Kenwood's next challenge to the constitutionality of sec. 102.56, Stats. (1975), is based on its contention that sec. 102.56 presents an unlawful delegation of power under article IV, section 1, of the Wisconsin Constitution. Kenwood maintains that because sec. 102.56 contained no guidelines or standards, the examiner was given unlimited authority in setting these awards. Again, Kenwood concedes that the amended version of sec. 102.56 is constitutional.

Article IV, section 1, of the Wisconsin Constitution provides: "The legislative power shall be vested in a senate and assembly." It is a well-established rule in Wisconsin that a delegation of legisative power to a subordinate agency will be upheld if the purpose of the delegating statute is ascertainable and there are procedural safeguards to insure that the board or agency acts within that legislative purpose.[10] With this rule and the standard of review enunciated above in mind, we conclude that sec. 102.56, Stats. (1975), does not represent an unconstitutional delegation of power.

[10] *In re Guardianship of Klisurich*, 98 Wis. 2d 274, 280, 296 N.W.2d 742, 745 (1980).

The purpose behind the worker's compensation act is by no means a concept unknown to the law of this state. This purpose has been stated many times: "to compensate in some measure injured workmen for *loss of wage-earning power* sustained in the industry . . . ."[11] [Citations omitted.] [Emphasis in original.] Ample safeguards exist to insure that the examiner's and the LIRC's authority is not abused. The examiner's determination may be appealed to the LIRC, whose order, in turn, may be appealed to the circuit court. This decision is again subject to review by this court. Therefore, sufficient avenues exist to insure the fair and reasonable operation of the commission within the scope of the power it has been delegated. Accordingly, we hold that sec. 102.56, Stats. (1975), does not violate article IV, section 1, of the Wisconsin Constitution. The authority delegated to the examiner and the LIRC in this case is well within the limits of the law.

## SUFFICIENCY OF EVIDENCE TO ESTABLISH AN ADDITIONAL AWARD OF PERMANENT PARTIAL DISABILITY

Lastly, Kenwood argues that no credible evidence was established to support the additional award of permanent partial disability. The basis for this argument is that Dr. Lester V. Salinsky, whose report the examiner relied upon to award the additional award of permanent partial disability, voluntarily surrendered his license to practice medicine in Wisconsin. We disagree.

As noted above, in the absence of fraud, findings made by the LIRC acting within its powers are conclusive.[12]

---

[11] *Pfister & Vogel Tanning Co. v. DILHR*, 86 Wis. 2d 522, 529, 273 N.W.2d 293, 297 (1979).

[12] Sec. 102.23(1), Stats.

Only upon the following grounds may we reverse its decision:

(1) That the LIRC acted without or in excess of its powers;

(2) That the order or award was procured by fraud; or

(3) That the findings of fact by the LIRC do not support the order or award.[13]

We have reviewed the examiner's findings regarding this award and conclude that we must sustain them. We do not determine that Dr. Salinsky's testimony is patently incredible because his license was voluntarily surrendered. Accordingly, we hold that sufficient evidence was established to award additional permanent partial disability.

We note that Kenwood's appellate counsel alludes to a matter regarding Warwick's future career in the banking industry which is outside the record. The only reason we can see for mentioning this matter is to prejudice this court against Warwick.

It is well established that reviewing courts are limited to the record and are bound by the record. The record is not to be enlarged by material which neither the trial court, nor the appellate court, acting within their respective jurisdictions, have ordered incorporated into the record.[14] Supreme Court Rule section 60.01(7), states: "[A] judge should utilize opportunities to criticize and correct unprofessional conduct of attorneys and counselors, brought to his or her attention . . . ." Kenwood's appellate counsel shall consider themselves admonished.

---

[13] Sec. 102.23(1)(d), Stats.

[14] *State v. Aderhold,* 91 Wis. 2d 306, 314, 284 N.W.2d 108, 112 (Ct. App. 1979).

Any future noncompliance with the rules governing appellate procedure by counsel here shall lead to the imposition of sanctions.[15]

*By the Court.*—Judgment affirmed.

---

[15] *See id.* at 315, 284 N.W.2d at 112; *see also* sec. 809.83(2), Stats.