EATON CORP., Plaintiff-Respondent and Cross-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Appellant and Cross-Respondent,

Robert J. PABELICK, Defendant and Cross-Respondent.†

Court of Appeals

*No. 84–886. Submitted on briefs December 11, 1984.—*
*Decided January 21, 1985.*
(Also reported in 364 N.W.2d 172.)

† Petition to review denied.

For the defendant-appellant and cross-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Lowell E. Nass,* assistant attorney general of counsel, of Madison.

For plaintiff-respondent and cross-appellant the cause was submitted on the briefs of *Michael, Best & Fried-*

*rich,* with *Lee J. Geronime* and *Thomas P. Godar* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J.   The Labor and Industry Review Commission (LIRC) appeals from the trial court's reversal of an LIRC order which determined that Robert J. Pabelick (Pabelick) should be awarded $12,000 for potential wage loss because of permanent disfigurement. Because there was credible and substantial evidence to support the LIRC's findings of fact and its legal conclusion was reasonable, we reverse the trial court.

On cross-appeal, Eaton Corp. (Eaton) argues that scheduled workers' compensation benefits are the exclusive benefits available to Pabelick for potential wage loss. The trial court held that Pabelick could recover scheduled benefits as well as potential wage loss. We affirm the trial court.

On January 17, 1980, Pabelick was operating a brake press machine for Eaton when he accidentally activated the machine and crushed the fingers on both hands. All of Pabelick's left-hand fingers were amputated at midjoint. Four fingers of his right hand were amputated. Eaton conceded liability and paid temporary total disability benefits, permanent partial disability and medical expenses. Pabelick then sought benefits under sec. 102.-56, Stats., for potential wage loss due to disfigurement. A hearing on Pabelick's potential wage loss claim was held before an examiner for the Department of Industry, Labor and Human Relations. Pabelick was fifty-three years old at the time of the hearing. He had worked at Eaton for nearly thirty years, but had no special training other than that required by his job. Previously he had served in the army, had worked as an assembler and in a bakery. He had a tenth-grade education. Pabelick lacked the manual dexterity to return to his job as a press operator, but he returned to

work at Eaton as a driver of an electric truck. He was paid a lower wage as a truckdriver than he received as a press operator. Pabelick said he hoped to stay with Eaton until retirement. He ranked high on Eaton's seniority list and had a pension accumulating with the company.

The hearing examiner made the above findings and also found:

An award for disfigurement is made for all time, and the applicant, from the present date has approximately 17 years left in the labor market. Given the present and forseeable [sic] economic climate, the movement of manufacturing firms from the industrial Northeast and Midwest to other parts of the nation, there is no guarantee that the applicant will remain employed by the respondent, albeit, his substantial seniority provides some insulation from lay off.

The examiner considers the applicant's hands to be disfiguring and that such disfigurement would without question be noticable [sic] in any occupation and further finds that given the applicant's work history, age, education and his present employment status, the sum of $12,000 to be just compensation.

The LIRC affirmed the examiner's order and Eaton appealed. The trial court said that "[w]hile there is evidence sufficient to support an award," the matter should be remanded for further testimony regarding Pabelick's job security with Eaton and for an explanation of how the award was calculated. The trial court specifically noted that the record did not support the finding that in the present economic climate, and considering the movement of manufacturing firms from the Midwest to the sunbelt, there was no guarantee that Pabelick would remain employed by Eaton. The LIRC appeals the trial court's reversal.

The LIRC first argues that its determination of potential wage loss is a finding of fact and, because it alone may act as the finder of fact, the findings as to

Pabelick's disfigurement and potential wage loss must be upheld. Eaton counters that the question of whether Pabelick's disfigurement will occasion potential wage loss is a question of law subject to independent review by this court.

An appellate court may reverse a decision of the LIRC only upon the following grounds: (1) that the LIRC acted without or in excess of its powers; (2) that the order or award was procured by fraud; or (3) that the findings of fact by the LIRC do not support the order or award.[1] The LIRC's findings of fact are conclusive as long as they are supported by credible and substantial evidence.[2] An appellate court is not bound by the LIRC's conclusions of law, but reasonable legal conclusions by the LIRC will be sustained even if an alternative view may be equally reasonable.[3]

In a case identical to the instant case, this court decided that the question of whether disfigurement would occasion potential wage loss was a mixed question of law and fact.[4] The nature of the disfigurement and the extent to which the occupation requires public contact are questions of fact. Whether Pabelick's disfigurement will occasion potential wage loss is a question of law.

The hearing examiner noted Pabelick's age and found that he had seventeen years left in the work force. Pabelick has a tenth-grade education and little training other than that acquired at Eaton. The examiner also found Pabelick's wages already had been reduced and that it was likely, although not absolutely certain, that

---

[1] *Kenwood Merchandising Corp. v. LIRC*, 114 Wis. 2d 226, 230, 338 N.W.2d 312, 314 (Ct. App. 1983).

[2] *Id.*

[3] *Id.*

[4] *Id.; see also Evans Bros. Co. v. LIRC*, 113 Wis. 2d 221, 225–26, 335 N.W.2d 886, 888 (Ct. App. 1983).

Pabelick would keep working for Eaton. The examiner's finding that midwestern manufacturing firms are migrating to the sunbelt was improper because it was not based on evidence contained in the record. It is apparent, however, that the examiner considered all the factors listed in sec. 102.56, Stats., in determining that Pabelick was entitled to an award for potential wage loss due to disfigurement. Mentioning the migratory nature of some manufacturing firms was surplusage. The other findings made by the examiner concerning Pabelick's age, education, training, previous experience, earnings, present occupation and likelihood of future suitable occupational change were sufficient to sustain the examiner's order. Because the LIRC's findings of fact were based on credible and substantial evidence and its legal conclusion was reasonable, we reverse the trial court's order.

Eaton also argues that the examiner failed to articulate any reasons for the $12,000 award. Section 102.56, Stats., provides in part as follows: "If an employe is so permanently disfigured as to occasion potential wage loss, the department may allow such sum as it deems just as compensation therefor, not exceeding the employe's average annual earnings . . . ." This section affords the department substantial leeway in calculating a sum to compensate workers who most likely will never know the full extent to which their disfigurements reduced their wages. This section also limits the award to the worker's annual wages. Here, the examiner knew Pabelick's weekly wages before and after the injury. The $12,000 award was less than his average annual wages. We hold that this amount was "just" within the meaning of sec. 102.56.

Eaton argues on cross-appeal that the scheduled compensation benefits provided in sec. 102.52, Stats., con-

stitute Pabelick's exclusive remedy for potential wage loss. Eaton asserts that *Mednicoff v. DILHR*,[5] and *Vande Zande v. DILHR*[6] provide that the statutory schedule is the exclusive source of recovery for Pabelick's potential wage loss. The hearing examiner concluded that because the workers' compensation statutes do not prohibit disfigurement awards in addition to scheduled benefits, Pabelick was entitled to both awards. The LIRC affirmed the hearing examiner on this issue as did the trial court.

Eaton's reliance on *Mednicoff* and *Vande Zande* is misplaced. *Mednicoff* says "loss of earning capacity is inherent in the schedule,"[7] but *Mednicoff* concerned a disabling hip injury due to a fall, not a disfigurement like Pabelick's. Both cases dealt with scheduled versus nonscheduled disabilities and neither case mentions potential wage loss due to disfigurement. Section 102.56, Stats., provides for a separate recovery of potential lost wages solely due to disfigurement. Construing the scheduled benefits in sec. 102.52, Stats., to include potential lost wages due to disfigurement would render sec. 102.56 meaningless. That would be absurd in light of the express allowance of such potential lost wages for disfigurement in sec. 102.56. We hold that the LIRC properly awarded Pabelick both scheduled benefits under sec. 102.52 and potential wage loss for disfigurement under sec. 102.56.[8]

*By the Court.*—Order affirmed in part, reversed in part.

---

[5] 54 Wis. 2d 7, 194 N.W.2d 670 (1972).

[6] 70 Wis. 2d 1086, 236 N.W.2d 255 (1975).

[7] *Mednicoff, supra* note 5, at 12, 194 N.W.2d at 672.

[8] In *Kenwood, supra* note 1, at 231–32, 338 N.W.2d 314, this court rejected the appellant's argument which was the same as the argument made by Eaton in this case.